IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MATTHEW SOBANSKY, an Individual;

Movant,

vs.

RAVGEN, INC., a Delaware Corporation;

Respondent.

8:23CV398

MEMORANDUM AND ORDER

Three subpoenas were served on Movant Matthew Sobansky, in actions pending in the United States District Court for the District of Delaware. Respondent Ravgen, Inc. is the plaintiff in each of the actions.[1] Sobansky, a nonparty, moved to quash the deposition subpoena, arguing the discovery sought is unreasonably cumulative, duplicative, and can be obtained from a different source with less burden and more convenience. (Filing No. 1).

For the reasons stated below, the motion to quash will be granted as to the duration and location of the noticed deposition and denied in all other respects.

BACKGROUND

The motion before this court involves three cases in the broader web of cases regarding blood collection tubes and alleged patent infringement. In opposition to the motion to quash, Ravgen asserts that Streck, a non-party, and Roche, a party defendant, are working together[2] to ensure that Ravgen cannot

---

[1] The defendants are Ariosa Diagnostics, Inc., Roche Sequencing Solutions, Inc., Roche Molecular Systems, Inc., Foundation Medicine, Inc., Myriad Genetics, Inc., Myriad Women's Health, Inc. and Biora Therapeutics, Inc. (Collectively, "Delaware Defendants"). (Filing No. 1).

[2] Ravgen's brief also highlights the fact that Sobansky is represented by the attorneys who previously represented Streck. It insinuates, or outright accuses counsel of obstructing discovery efforts in prior cases in other courts (Filing No. 12 at CM/ECF p. 6), and also asserts Streck and Roche counsel are "coordinating"

confirm the presence of formaldehyde in the tubes manufactured by Streck or Roche. (See Filing No. 12).

Ravgen is a biotechnology company with patents related to the methods of detecting genetic disorders. In the Delaware actions, Ravgen asserts the Delaware Defendants infringe on Ravgen patents through the performance of their accused genetic tests. Ravgen claims the tests require an agent that inhibits or impedes the lysis of cells in blood samples. Samples for the accused tests are collected in tubes manufactured by Streck, Inc. or by Roche, a Delaware Defendant. Ravgen contends that Roche and Streck tubes contain formaldehyde (or its aqueous form known as formalin), which is an agent recited in certain claims of the Ravgen patents. Ravgen contends this is true because the chemical makeup of the tubes includes a chemical identified as IDU, a known formaldehyde releaser. The Delaware defendants contend they do not infringe Ravgen's patent and deny that formaldehyde is present in the Roche tubes and Streck tubes, despite the presence of IDU.

The movant, Sobansky, is an individual who states he has no present relationship with any party named in the litigation filed by Ravgen in the District of Delaware. He resides in Lincoln, Nebraska and is employed by Zoetis, Inc. Sobansky was previously employed by Streck, Inc. a nonparty to the current dispute, and a nonparty to the underlying lawsuits in Delaware. Ravgen's subpoenas were issued upon Sobansky because he was involved in or requested the testing of the Streck and Roche tubes during his employment with Streck, Inc. (See Filing No. 3-1; Filing Nos. 14-16).  Sobansky asserts Ravgen has sought and

---

to obfuscate Ravgen's efforts to secure Sobansky's testimony. (Filing No. 12 at CM/ECF p. 11). Roche disputes these assertions and argues that Streck did not fail to meet its agreed discovery obligations.
  The court need not and will not discuss Ravgen's contentions regarding the communication or cooperation between counsel for Streck and Roche. And it will decide the pending motion to quash based on the parties' evidence and legal arguments in this forum and not allegations of misconduct between Streck and Roche, either currently or during related litigation in other forums.

should seek any information about the Streck and Roche tubes directly from Roche, and Ravgen has not taken reasonable steps to avoid an undue burden on Sobansky, as required by Fed. R. Civ. R. 45.

Ravgen opposes the motion and seeks an order requiring Sobansky to comply with a deposition request. (Filing No. 12).

## ANALYSIS

I.  Transfer to Delaware

In its opposition to the present motion to quash, Ravgen argues that, as an alternative to quashing the subpoenas, the court should transfer Sobansky's motion to the District of Delaware, the issuing court. Disputes over third-party subpoenas are governed by Rule 45 of the Federal Rules of Civil Procedure. When, as in this case, the court where compliance is required did not issue the subpoena, the motion to quash the subpoena may be transferred to the issuing court "if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). Sobansky objects to transfer. See Filing No. 26 at CM/ECF p. 17.

Since Sobansky does not consent to transfer, the motion cannot be transferred unless exceptional circumstances exist. When deciding if exceptional circumstances exist, the court considers: 1) whether the underlying litigation will be disrupted if the subpoena dispute is not transferred; (2) whether the nonparty subpoena recipient will suffer undue burden or cost if the subpoena dispute is transferred; (3) whether, based on various considerations, the issuing court is in the best position to rule on the motion to compel. In re Syngenta, No. 20-MC-064, 2020 WL 5988498, at *4 (D. Minn. Oct. 9, 2020). As the parties requesting transfer,

Ravgen bears the burden of proving the motion to quash should be transferred to the Delaware court. Id.

The motion to quash has been pending in Nebraska for approximately two months. The motion is fully briefed, and the court has reviewed the filings and is ready to rule on the motion to quash. Transfer at this point would further delay resolution, thereby disrupting the Delaware litigation rather than limiting that disruption. Sobansky claims that as a non-party individual he would suffer undue burden and cost if the motion is transferred to Delaware, because he would be forced to secure or add counsel in a venue far from his home. He also argues transfer is inappropriate because he is a Nebraska resident and all activities at issue occurred in Nebraska while he was employed at a Nebraskan company. (Filing No. 26 at CM/ECF p. 18).

While the litigation pending in Delaware is no doubt complicated, the issues raised in the motion to quash are not. Ravgen is requesting testimony regarding testing, reports, or evaluations involving the Roche Cell-Free DNA collection tubes or the Streck, Inc. cell-free DNA collection tubes, and any comparisons between or studies involving the Roche or Streck Tubes. Ravgen is also requesting the deposition of a nonparty regarding his experience with these tubes. The court need not understand all of the complexities of the Delaware lawsuit to rule on the motion to quash.

Finally, while Ravgen argues that the Delaware court has been involved in the extensive procedural history and "has deep familiarity with the complex history and technology at issue," this court has similar familiarity, having ruled on similar issues in at least one related case. See Ravgen, Inc. v. Streck, Inc., 4:22-cv-3017 (D. Neb. 2022). Ravgen bears the burden of showing exceptional circumstances and has not identified any rulings by the Delaware court concerning subpoenas on

third parties in connection with this action. Under the facts presented, the court is not convinced exceptional circumstances exist to support transfer of the motion to quash to Delaware.

II. Motion to Quash

A. Standard of Review

Under the Federal Rules of Civil Procedure, a party may discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevancy for the purposes of discovery, includes "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). However, the standard for nonparty discovery may require a stronger showing of relevance than for party discovery. Cor Clearing, LLC v. Calissio Res. Grp., Inc., No. 8:15CV317, 2016 WL 2997463, at *2 (D. Neb. May 23, 2016).

Similarly, Federal Rule of Civil Procedure 26 authorizes the court, upon good cause shown, to enter an order limiting discovery or imposing just terms on taking discovery to protect a person or party from annoyance, embarrassment, oppression, or undue burden. Fed. R. Civ. P. 26. A court must limit discovery when "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Quiles v. Union Pac. R.R. Co., Inc., No. 8:16CV330, 2018 WL 734172, at *2 (D. Neb. Feb. 6, 2018), aff'd, No. 8:16CV330, 2018 WL 2148979 (D. Neb. May 10, 2018).

Pursuant to Federal Rule of Civil Procedure 45, a court "must quash or modify a subpoena that ... subjects a person to undue burden." Fed. R. Civ. P. 45.

Factors considered in determining whether a subpoena presents an undue burden include: (1) the relevance of the requested information; (2) the need for the party for the information; (3) the breadth of the request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested information; and (6) the burden imposed. Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 818 (5th Cir. 2004); see, also Quiles at *2 "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." Id.

### B. Objections to the Subpoena

Sobansky asserts complying with the deposition subpoena will subject him to undue burden and that his deposition is not needed to secure the information desired regarding the composition of the Roche and Streck tubes.

As to the Roche Tubes, Sobansky asserts his deposition is not needed to secure the information concerning the composition of the Roche tube because Ravgen can, and has, sought this information directly from Roche. Sobansky argues that Roche has already responded to 83 requests for production of documents and things, many of which directly relate to the composition and operation of the tubes. Sobansky asserts Ravgen has not explained why it cannot obtain the information is seeks through its own testing of the Roche products in its possession.

As to the Streck Tubes, Sobansky asserts Streck is not accused of infringing upon Ravgen's patents and Streck is not a party to any of the Delaware cases. Sobansky argues he was only briefly employed by Streck and left Streck's employ almost three years ago. (Filing No. 1 at CM/ECF p. 2). He also asserts he was not involved in the development, manufacture, or sale of the product. Sobansky asserts the product was introduced in 2009, more than seven years before he first

became employed by Streck and that others have provided testimony regarding this product in connection with the lawsuit. (Filing No. 2 at CM/ECF p. 6).

He asserts: 1) Streck has previously responded to numerous, extensive discovery subpoenas served upon it by Ravgen in connection with Ravgen's patent litigation; 2) Streck has provided documents and testimony relating to its blood collection tube, and 3) Streck has complied with Ravgen's discovery, in accordance with agreements reached between those parties. This Court has previously addressed the scope of Ravgen's discovery directed to Streck and its blood collection tube. See, generally Ravgen, Inc. v. Streck, Inc., No. 4:22-cv-03017-JMG-CRZ (D. Neb. 2022). Thus, Sobansky asserts, Ravgen's subpoena places an undue burden upon him and fails to comply with the requirements of Rule 45.

Ravgen asserts Sobansky conducted testing concerning the chemical composition of Roche tubes during his employment with Streck. This testing was performed for litigation between Streck and Roche in Germany (Filing No. 12 at CM/ECF p. 3). He then authored reports, produced to Ravgen by Roche, finding a "quantitative determination of 'free formaldehyde' and a 'qualitative identification of imidazolidinyl urea (IDU), glycine, and ethylenediaminetetraacetic acid (EDTA)" in Roche tubes. Sobansky concluded from his testing that the "Roche tubes contain formaldehyde, consistent with Ravgen's contentions –and contrary to the Delaware Defendants' arguments." (Filing No. 12 at CM/ECF p. 4). Additionally, Sobansky requested a study to be run at the University of Kansas to quantify the amount of formaldehyde in the Streck Tubes, and he is named in the report produced by the university. Ravgen seeks testimony from Sobansky regarding his personal knowledge of the testing, and it asserts this testimony is unique and cannot be sought from another source.

C. Analysis

i.   Relevance

Samples for the accused tests, including those used in Biora's and Myriad's tests, are collected in Streck Tubes. While Streck is not a party to the Delaware litigation, the Delaware Defendants have denied that Roche and Streck tubes contain formaldehyde as part of their defenses to Ravgen's infringement claims.[3] (Filing No. 12 at CM/ECF p. 3). Thus, the presence or absence of formaldehyde in the tubes, (or whether the combination of IDU, glycine and EDTA present in the Roche and Streck Tubes produces free formaldehyde) is at issue in the trial.

Sobansky's testimony regarding his reports and the report by the University of Kansas are relevant to the underlying litigation or will lead to the discovery of relevant information. Sobansky does not argue that his deposition seeks irrelevant information. Rather, he argues that as a former employee of Streck he should not be required to sit for a deposition with respect to Roche's product, that discovery already obtained through other sources is sufficient, and that Ravgen could conduct their own physical and simulation testing. These arguments will be addressed more thoroughly, below.

ii.   Need

Sobansky conducted testing on Roche tubes as part of his employment with Streck. He also ordered additional testing to be done through the University of Kansas to determine whether formaldehyde was present in the Streck tubes. Ravgen argues that as the only person named in the Roche and Streck Tube Testing Reports, Sobansky is uniquely situated to provide information regarding the tests, and there is no appropriate substitute for him. Further, it appears that the

---

[3] Sobansky argues that Ravgen does not point to any statements by Roche disputing the small amounts of formaldehyde in the Roche Tube, and none of the non-Roche defendants use Roche Tubes. This assertion is not supported by evidence provided in this matter.

expected testimony by Sobansky could contradict the discovery Ravgen has received from other sources, and contradict the statements of Roche and Streck regarding the chemical makeup of their tubes.

Ravgen asserts it has deposed Roche's corporate designee, Renee Stokowski, who agreed she is the most knowledgeable person at Roche regarding Roche tubes. (Ex. 15 at 268:11-20). Stakowski testified that Roche does not know if there is formaldehyde in Roche tubes and that Roche has not conducted testing to determine whether there is. ([Filing No. 19 at CM/ECF pp. 11-12](#)). Thus, information regarding whether there is formaldehyde in the Roche tubes is not readily obtainable from a source at Roche, but *is* obtainable through Sobansky. The Delaware defendants deny that the challenged tubes contain formaldehyde and are expected to argue that the alleged lack of formaldehyde means they do not infringe on Ravgen's patents. Ravgen argues that without Sobansky's testimony, Roche will likely object to the admissibility of the Roche Tube Testing Reports on hearsay grounds.

Further, Ravgen has produced testimony from Streck's CEO stating that formaldehyde is not used to stabilize cells in Streck's Cell-Free DNA Tube and that formaldehyde is not part of Streck's process. ([Filing No. 19 at CM/ECF pp. 6-7](#)). Sobansky requested testing on behalf of Streck to "measure the concentration of formaldehyde in proprietary cell preservatives" in Streck tubes. ([Filing No. 16 at CM/ECF p. 2](#)). Ravgen wants to explore what Sobansky knew about the presence of formaldehyde in the tubes at the time the testing was requested. ([Filing No. 12 at CM/ECF p. 13](#)). Ravgen argues it is likely that without Sobansky's deposition, Streck witnesses will distance themselves from the Streck Tube Testing Report, thereby preventing Ravgen from providing testimony and evidence the jury would need to evaluate the arguments advanced by the Delaware Defendants, who used both Streck and Roche tubes.

Sobansky's knowledge regarding the motivation for the testing and the test results is relevant to the issues presented in the Delaware cases. Ravgen's argument that Sobansky is uniquely positioned to provide testimony regarding his personal knowledge of the tube testing is convincing. This factor weighs in favor of denying the motion to quash.

iii.   Breadth and Particularity of the Requested Information

Sobansky argues that Ravgen, the requesting party does not sufficiently identify, with particularity, the information sought by the deposition. Ravgen counters that the deposition subpoena was accompanied by and refers to a document subpoena requesting testing, reports, or evaluations relating the composition and/or mechanism of Roche and Streck Tubes, as well as any comparisons between or studies involving the tubes.

Sobansky provided a declaration discussing the Roche Tube Testing Reports he authored and the testing he performed, as well as the Streck Tube Testing Report he requested. Ravgen asserts it seeks Sobansky's deposition to "explore his personal knowledge regarding that testing and those documents" as well as any information Sobansky can provide about testing he personally performed. If limited to the topics listed on the document subpoena, the scope of the deposition proposed is narrow. If Sobansky has limited recall of the testing performed, and if no additional testing was performed, Sobansky can confirm those facts at a deposition. (Filing No. 12 at CM/ECF p. 14).

iv.   Time period covered by the Request

Sobansky argues that Ravgen has refused to consider limits on the duration of the deposition, despite Sobansky's distant relation to the issues in the underlying litigation. (Filing No. 2 at CM/ECF p. 16). Specifically, Sobansky objects to the proposed 7-hour duration of the deposition.

Absent a court order granting additional time, seven hours is the maximum length for a fact deposition. Fed. R. Civ. P. 30(d)(1). However, Ravgen suggests the time of the deposition can be shortened, if appropriate, rather than quashing the subpoena altogether. Ravgen asserts it seeks Sobansky's deposition not because of the breadth of his knowledge, but due to the uniqueness of it. (Filing No. 12 at CM/ECF p. 14). Given this assertion, the limited scope of the deposition, and the time that has passed since Sobansky's employment with Streck, it is appropriate to limit the deposition of Sobansky to a half day (3.5 hours). If Sobansky fully responds to Ravgen's inquiry and has no further information to give the deposition need not take the full time allotted. The parties are expected to comply with all appropriate rules and cooperate "to secure the just, speedy, and inexpensive determination" of this matter. Fed. R. Civ. P. 1.

v. Burden

Sobansky states:

There is no need to require Sobansky to have to travel 120 miles, to and from Omaha, Nebraska, to sit for entire day of deposition questioning to recall, if he can, certain limited testing he performed over three years ago under the direction of counsel in connection with unrelated litigation between Streck and Roche that did not involve Ravgen or its patents."

(Filing No. 2 at CM/ECF p. 10).

Lincoln to Omaha is not a great distance, and many people in this state travel between the two cities on a daily basis for work. However, Ravgen indicates it is flexible and Ravgen's counsel is willing to travel and accommodate a location that is more convenient for Sobansky, including Lincoln, where Sobansky resides. Any deposition of Sobansky should take place in Lincoln to avoid any undue burden due to travel.

    vi.    Privilege

Sobansky asserts any effort to examine him regarding testing performed at the direction of counsel in connection with prior, unrelated litigation will raise issues of attorney-client privilege and work product. The Roche and Streck Tube Testing reports were provided by Streck to Roche, who was their adversary, and they were provided to the German Court. Thus, Ravgen asserts it is "hard to understand how the details of the testing would be protected by any attorney client privilege or work product immunity." ([Filing No. 12 at CM/ECF p. 16](#)). However, to the extent Sobansky has concerns regarding privilege and work product immunities, any objections can be handled during the deposition.

    vii.    Expense and Inconvenience

Sobansky's declaration, submitted in support of his motion asserts that to attend a deposition in Omaha he would need to use one of a limited number of PTO days and give up over nine hours of time. The court has considered this factor and determined that a deposition that is limited in scope and time, and located closer to Sobansky's home is appropriate. This would limit or at least decrease the expense and inconvenience to him.

Accordingly,

IT IS ORDERED: Movant's Motion to Quash (Filing No. 1) is granted as to the duration and location of the deposition, but denied in all other respects as detailed herein.

Dated this 16th day of November, 2023.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge